Jason M. Drangel (JD 7204)
jdrangel@ipcounselors.com
Ashly E. Sands (AS 7715)
asands@ipcounselors.com
Danielle Futterman (DY 4228)
dfutterman@ipcounselors.com
Gabriela N. Nastasi
gnastasi@ipcounselors.com
Grace A. Rawlins
grawlins@ipcounselors.com
EPSTEIN DRANGEL LLP
60 East 42nd Street, Suite 1250
New York, NY 10165
Telephone: (212) 292-5390
Facsimile: (212) 292-5391
*Attorneys for Plaintiff*
*Denim Tears, LLC*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DENIM TEARS, LLC,<br><br>*Plaintiff*<br><br>v.<br><br>SHENZHEN XIAOTANGREN TECHNOLOGY CO., LTD. d/b/a SUGARGOO.COM, SUGARGOO TECHNOLOGY LIMITED, SUGARGOO LLC, SUGARGOO CO., LIMITED, SHENZHEN SUGARGOO TECHNOLOGY CO., LTD., HANGZHOU YANHENG TECHNOLOGY CO., LTD., HANGZHOU STILL CULTURE MEDIA CO., LTD., HAINAN XIAOTANGREN TECHNOLOGY CO., LTD., WUHAN XIAOTANGREN TECHNOLOGY CO., LTD. and SHENZHEN LINGNUO INTERACTIVE MARKETING CO., LTD.,<br><br>*Defendants* | 24-cv-5675 (AKH)<br><br><br>**PRELIMINARY INJUNCTION ORDER** |

## GLOSSARY

| Term | Definition |
|------|------------|
| **Plaintiff or Denim Tears** | Denim Tears, LLC |
| **SUGARGOO or Defendants** | Shenzhen Xiaotangren Technology Co., Ltd. d/b/a SUGARGOO.com, SUGARGOO Technology Limited, SUGARGOO LLC, SUGARGOO Co., Limited, Shenzhen Sugargoo Technology Co., Ltd., Hangzhou Yanheng Technology Co., Ltd., Hangzhou Still Culture Media Co., Ltd., Hainan Xiaotangren Technology Co., Ltd., Wuhan Xiaotangren Technology Co., Ltd. and Shenzhen Lingnuo Interactive Marketing Co., Ltd. operate the SUGARGOO.com online platform, which aids consumers across the world and specifically consumers residing in the U.S., including New York, by locating, consolidating, marketing, promoting, offering for sale, selling, purchasing, warehousing and shipping goods from third-party Chinese marketplaces |
| **Taobao** | Taobao, operating as Taobao.com, is owned and operated by the Alibaba Group Holding Limited, is an online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants to advertise, offer for sale, sell, distribute and ship their wholesale and retail products in China |
| **1688** | 1688, operating as 1688.com, is also owned and operated by the Alibaba Group Holding Limited, is an online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants to advertise, offer for sale, sell, distribute and ship their wholesale and retail products in China |
| **Tmall** | Tmall, operating as tmall.com, is owned and operated by the Alibaba Group Holding Limited, is an online marketplace platform, which allows manufacturers, wholesalers and other third-party merchants to advertise, offer for sale, sell, distribute and ship their wholesale and retail products in China |
| **Epstein Drangel** | Epstein Drangel LLP, counsel for Plaintiff |
| **New York Address** | 60 East 42nd Street, Suite 1250, New York, New York 10165 |
| **Complaint** | Plaintiff's Complaint |
| **Application** | Plaintiff's *ex parte* Application for: 1) a temporary restraining order; 2) an order restraining Defendants' Assets (as defined *infra*) with the Financial Institutions (as defined *infra*); 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing alternative service and 5) an order authorizing expedited discovery |
| **Herring Dec.** | Declaration of Kevin Herring in Support of Plaintiff's Application |

| Nastasi Dec. | Declaration of Gabriela N. Nastasi in Support of Plaintiff's Application |
| --- | --- |
| Denim Tears Products | A successful high-end lifestyle streetwear of men's and women's apparel, accessories, bags and other ready-made goods which are recognized for its powerful imagery, bold graphics, intricate details and is most notably known for its image of a cotton wreath as motif |
| Denim Tears Marks | U.S. Trademark Registration Nos.: 6,130,729 for "DENIM TEARS"; a variety of goods in Class 25; and 6,770,233 for " " for a variety of goods in Class 25 |
| Denim Tears Work | U.S. Copyright Registration No.: VA 2-248-145 covering "COTTON WREATH" |
| Counterfeit Products | Products bearing or used in connection with the Denim Tears Marks and/or Denim Tears Work and/or products in packaging and/or containing labels bearing the Denim Tears Marks and/or Denim Tears Work, and/or bearing or used in connection with marks and/or artwork that are confusingly and/or substantially similar to the Denim Tears Marks and/or Denim Tears Work and/or products that are identical or confusingly or substantially similar to the Denim Tears Products |
| Infringing Listings | Defendants' listings for Counterfeit Products |
| Merchant Storefronts | Any and all storefronts through which sellers on the Taobao, 1688 and Tmall platforms to manufacture, import, export, advertise, market, promote, distribute, display, offer for sale, sell and/or otherwise deal in Counterfeit Products, which are promoted and/or advertised by Defendants, their respective officers, employees, agents, servants and all persons in active concert or participation with any of them |
| Defendants' Assets | Any and all money, securities or other property or assets of Defendants (whether said assets are located in the U.S. or abroad) |
| Defendants' Financial Accounts | Any and all financial accounts associated with or utilized by Defendants (whether said account is located in the U.S. or abroad) |
| Financial Institutions | PayPal Inc. ("PayPal"), the Alibaba Group d/b/a Alibaba.com payment services, World First Asia, Ltd. ("World First Asia"), AUS Merchant Services, Inc. ("AUS") and Alipay Merchant Services Pte. Ltd., Alipay.com Co., Ltd., Ant Financial Services Group, Stripe Payments Canada, Ltd. ("Stripe"), Visa Inc. ("Visa"), American Express Company ("American Express"), Mastercard Inc. ("Mastercard"), Discover Financial Services, Inc. ("Discover"), Google LLC payment services (e.g. Google Pay), Apple Inc. payment services ("Apple Pay"), JPMorgan Chase Bank, NA ("Chase"), Payoneer Inc. ("Payoneer"), PingPong |

| | Global Solutions Inc. ("PingPong"), Airwallex (Hong Kong) Limited ("Airwallex HK"), Airwallex (UK) Limited, Worldpay (HK) Limited ("Worldpay"), World First UK Ltd. ("World First UK"), Bank of China ("BOC"), Citibank N.A. ("Citibank"), Green Dot Bank, iDEAL payment services ("iDEAL"), Wise payment services ("Wise"), WeChat Pay Payment Services (e.g. WeChat Pay), Community Federal Savings Bank ("CFSB"), First Century Bank NA ("First Century") and/or any entities affiliated with those listed herein holding Defendants' Assets |
|---|---|

WHEREAS, Plaintiff moved *ex parte* on July 26, 2024 against Defendants for the following: 1) a temporary restraining order; 2) an order restraining Defendants' Assets with the Financial Institutions; 3) an order to show cause why a preliminary injunction should not issue; 4) an order authorizing bifurcated and alternative service; and 5) an order authorizing expedited discovery;

WHEREAS, the Court entered an Order granting Plaintiff's Application on July 31, 2024 (the "TRO"), which ordered Defendants to appear on August 14, 2024 at 11:00 a.m. to show cause why a preliminary injunction should not issue (the "Show Cause Hearing");

WHEREAS, by letter dated August 7, 2024, Plaintiff requested to modify and extend the TRO, including the date of the Show Cause Hearing, and on the same day, August 7, 2024, the Court granted Plaintiff's request ("August 7, 2024 Order") and entered an Order scheduling the Show Cause Hearing for August 28, 2024 at 12:00 p.m. ("August 7, 2024 Scheduling Order");

WHEREAS, on August 21, 2024, the Court entered an Order rescheduling the time of the Show Cause Hearing to 11:30 a.m. ("August 21, 2024 Scheduling Order");

WHEREAS, on August 23, 2024, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application, the August 7, 2024 Order, the August 7, 2024 Scheduling Order and the August 21, 2024 Scheduling Order on Defendant SUGARGOO Co., Limited via Federal Express at Defendant's registered office address, which was successfully delivered on August 27, 2024;

WHEREAS, on August 23, 2024, pursuant to the alternative methods of service authorized by the TRO, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application, the August 7, 2024 Order, the August 7, 2024 Scheduling Order and the August 21,

1

2024 Scheduling Order on Defendant SUGARGOO Technology Limited via Federal Express at Defendant's registered office address, which was successfully delivered on August 29, 2024;

WHEREAS, on August 28, 2024, Plaintiff served the Summons, Complaint, TRO, all papers filed in support of the Application, the August 7, 2024 Order, the August 7, 2024 Scheduling Order and the August 21, 2024 Scheduling Order on Defendant Sugargoo LLC;

WHEREAS, on the same day, August 23, 2024, Plaintiff successfully provided Defendant Shenzhen Xiaotangren Technology Co., Ltd. d/b/a SUGARGOO.com with notice of this action, the TRO, all papers filed in support of Plaintiff's Application, the August 7, 2024 Order, the August 7, 2024 Scheduling Order and the August 21, 2024 Scheduling Order via the following email addresses: finance@sugargoo.com, business@sugargoo.com and ipreport@sugargoo.com. The email to Defendants' email address SUGARGOO@email.sugargoo.com was not delivered.[1]

## PRELIMINARY FACTUAL FINDINGS & CONCLUSIONS OF LAW

A.    Denim Tears, launched in 2019, is a successful and high-end lifestyle streetwear line of men's and women's apparel, accessories, bags and other ready-made goods which are distributed in the United States and abroad ("Denim Tears Brand").

B.    The Denim Tears Products are marketed under the Denim Tears Marks. The Denim Tears Brand is recognized for its powerful imagery, bold graphics, intricate details and garments that serve as visual narratives. The Denim Tears Brand most notably uses an image of a cotton wreath as a motif.

C.    The Denim Tears Products are sold direct to consumer via Denim Tears' official website, https://denimtears.com/, the Denim Tears' flagship retail store located in New York City

---

[1] At the time the instant action was filed, Plaintiff was not in possession of any email addresses for any of the Defendants. However, through continued research, expedited discovery provided by the Financial Institutions and through receipts from test purchase made by Epstein Drangel from Sugargoo.com, Plaintiff discovered the four (4) email addresses which are associated with Defendant Shenzhen Xiaotangren Technology Co., Ltd.

and the multi-brand retailer Dover Street Market. Due to the popularity of the Denim Tears Brand it is sold on high-end reseller websites where the Denim Tears Products are often sold for more than the original selling price, including GOAT, Grailed and StockX.

D.    The Denim Tears Brand has also been showcased through collaborations with other notable fashion brands including Ugg, Stüssy, Champion, Converse, ASICS, and Dior.

E.    Since the launch, the Denim Tears Brand and Denim Tears Products have been featured in numerous press publications, including, but not limited to, *Complex*, *Esquire*, *Highsnobriety*, *Vogue*, *Women's Wear Daily*, *Purveyour* and *Hypebeast*, among others.

F.    Denim Tears Products typically retail for between $50.00 - $700.00.

G.    While Denim Tears has gained significant common law trademark and other rights in its Denim Tears Marks and Denim Tears Products through use, advertising and promotion, Denim Tears also protected its valuable rights by filing for and obtaining federal trademark registrations.

H.    For example, Denim Tears owns the following U.S. Trademark Registration Nos.:

# DENIM TEARS

6,130,729 for "                    " for a variety of goods in Class 25; and 6,770,233



for "                " for a variety of goods in Class 25.

I.    The Denim Tears Marks are currently in use in commerce in connection with the Denim Tears Products. The Denim Tears Marks were first used in commerce on or before the dates of first use as reflected in the respective registrations attached to the Complaint as Exhibit B.

J.    In addition, Denim Tears also owns both registered and unregistered copyrights related to the Denim Tears Products.

K.    For example, Denim Tears owns the Denim Tears Work, i.e. U.S. Copyright Registration No.: VA 2-248-145 covering "COTTON WREATH."

L.    The success of the Denim Tears Products is due in part to Denim Tears' marketing and promotional efforts. These efforts include advertising and promotion through social media, Denim Tears website (available at https://denimtears.com) and print and internet-based advertising. Denim Tears' success is also due to its use of the highest quality materials and processes in making the Denim Tears Products. Additionally, Denim Tears owes a substantial amount of the success of the Denim Tears Products to its consumers and word-of-mouth buzz that its consumers have generated.

M.    Denim Tears' efforts, the quality of Denim Tears Products and the word-of-mouth buzz generated by its consumers have made the Denim Tears Marks, Denim Tears Work and Denim Tears Products prominently placed in the minds of the public. Members of the public and retailers have become familiar with the Denim Tears Marks, Denim Tears Work and Denim Tears Products and have come to associate them exclusively with Denim Tears. Denim Tears has acquired a valuable reputation and goodwill among the public as a result of such associations.

N.    Denim Tears has gone to great lengths to protect its interests in the Denim Tears Products, Denim Tears Marks and Denim Tears Work. No one other than Denim Tears and its authorized licensees and distributors are authorized to manufacture, import, export, advertise, offer for sale or sell any goods utilizing the Denim Tears Marks and/or Denim Tears Work, or use the Denim Tears Marks and/or Denim Tears Work in connection with goods or services or otherwise, without the express permission of Denim Tears.

4

O.    Through Epstein Drangel's investigative and enforcement efforts, Plaintiff learned of Sugargoo's actions which vary and include, but are not limited to advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging and shipping Counterfeit Products to U.S. consumers, including those located in the state of New York. Sugargoo promotes the purchase of Counterfeit Products listed on Merchant Storefronts, personally purchase Counterfeit Products and organize, ship and complete the sale of Counterfeit Products to Defendants' customers.

P.    Sugargoo is not, nor has it ever been, an authorized distributor or licensee of the Denim Tears Products. Neither Plaintiff, nor any of Plaintiff's authorized agents, have consented to Sugargoo's use of the Denim Tears Marks, nor has Plaintiff consented to Sugargoo's use of marks that are confusingly or substantially similar to, identical to and constitute a counterfeiting or infringement of the Denim Tears Marks and/or Denim Tears Work.

Q.    Plaintiff is likely to prevail on its Lanham Act, Copyright Act and related common law claims at trial.

R.    As a result of Defendants' counterfeiting and infringing activities, Plaintiff, as well as consumers, are likely to suffer immediate and irreparable losses, damages and injuries:

    a.    Defendants have advertised, listed, promoted, purchased, validated, reviewed, warehoused, packaged, shipped, exported and/or otherwise facilitated the sale of Counterfeit Products that infringe Plaintiff's Denim Tears Marks and/or Denim Tears Work; and

    b.    Plaintiff has well-founded fears that more Counterfeit Products will appear in the marketplace; that consumers may be misled, confused and disappointed by the quality of these Counterfeit Products, resulting in injury to Plaintiff's reputation and goodwill; and that Plaintiff may suffer loss of sales for the Denim Tears Products.

S.      The balance of potential harm to Defendants of being prevented from continuing to profit from their illegal and infringing activities if a preliminary injunction order is issued is far outweighed by the potential harm to Plaintiff, its business, the goodwill and reputation built up in and associated with Plaintiff's Denim Tears Marks and Denim Tears Work and to its reputation if the relief granted in the TRO is not continued through the pendency of this action.

T.      Public interest favors issuance of the preliminary injunction order in order to protect Plaintiff's interests in and to Plaintiff's Denim Tears Marks and/or Denim Tears Work, and to protect the public from being deceived and defrauded by Defendants' passing off of their substandard Counterfeit Products as Denim Tears Products.

## **ORDER**

1. Plaintiff is entitled to injunctive relief through the pendency of this litigation, and issuing this Order is warranted under Federal Rule of Civil Procedure 65 and Section 34 of the Lanham Act.

   a) Accordingly, Defendants are hereby restrained and enjoined from engaging in any of the following acts or omissions through the pendency of this litigation:

      i.  advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating the sale of Counterfeit Products or any other products bearing the Plaintiff's Denim Tears Marks and/or Denim Tears Work and/or marks that are confusingly and/or substantially similar to, identical to and constitute a counterfeiting or infringement of the Denim Tears Marks and/or Denim Tears Work;

      ii. directly or indirectly infringing in any manner any of Plaintiff's Denim Tears

6

Marks and/or Denim Tears Work;

iii. using any reproduction, counterfeit, copy or colorable imitation of any of Plaintiff's Denim Tears Marks and/or Denim Tears Work, to identify any goods or services not authorized by Plaintiff;

iv. using Plaintiff's Denim Tears Marks and/or Denim Tears Work and/or any other marks and/or artwork that are confusingly and/or substantially similar to Plaintiff's Denim Tears Marks and/or Denim Tears Work on or in connection with advertising, listing, promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating the sale of Counterfeit Products;

v. using any false designation of origin or false description, or engaging in any action that is likely to cause confusion, cause mistake and/or to deceive members of the trade and/or the public as to the affiliation, connection or association of any product advertised, listed, promoted, purchased, validated, reviewed, warehoused, packaged, shipped, exported and/or otherwise sold by Defendants with Plaintiff, and/or as to the origin, sponsorship or approval of any product manufactured, imported, exported, advertised, marketed, promoted, distributed, displayed, offered for sale or sold by Defendants and Defendants' commercial activities and Plaintiff;

vi. secreting, concealing, destroying, altering, selling off, transferring or otherwise disposing of and/or dealing with: (i) Counterfeit Products and/or (ii) any computer files, data, business records, documents or any other records or evidence relating Defendants' Assets and the advertising, listing,

7

promoting, purchasing, validating, reviewing, warehousing, packaging, shipping, exporting and/or otherwise facilitating the sale of Counterfeit Products;

    vii.   knowingly instructing any other person or business entity to engage in any of the activities referred to in subparagraphs 1(a)(i) through 1(a)(vi) above, and 1(b)(i) below.

  b)  Accordingly, Defendants and all persons in active concert and participation with Defendants who receive actual notice of this Order, including the Financial Institutions who satisfy those requirements and are identified in this Order are hereby restrained and enjoined from engaging in any of the following acts or omissions through the pendency of this litigation:

    i.   secreting, concealing, transferring, disposing of, withdrawing, encumbering or paying Defendants' Assets from or to Defendants' Financial Accounts until further ordered by this Court.

2.  As sufficient cause has been shown, the asset restraining order in the TRO shall remain in effect through the pendency of this action.

3.  As sufficient cause has been shown, such alternative service by electronic means ordered in the TRO and herein shall be deemed effective as to the Financial Institutions through the pendency of this action.

4.  As sufficient cause has been shown, service of this Order shall be made on and deemed effective as to the Financial Institutions if it is completed by the following means:

  a)  delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PayPal Inc. will be able to download a PDF copy of this Order via electronic mail to PayPal Legal Specialist at EEOMALegalSpecialist@paypal.com;

b)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Alibaba Group d/b/a Alibaba.com payment services, Alipay Merchant Services Pte. Ltd., Alipay.com Co., Ltd., Ant Financial Service Group will be able to download a PDF copy of this Order via electronic mail to US_IPR_TRO_Requests@alipay.com and complaints@worldfirst.com;

c)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where World First Asia will be able to download a PDF copy of this Order via electronic mail to complaints@worldfirst.com and enquiries.sg@worldfirst.com;

d)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where AUS will be able to download a PDF copy of this Order via electronic mail to consumerassistance@service.alipay.com;

e)      delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Stripe Payments Canada, Ltd. will be able to download a PDF copy of this Order via electronic mail to notices@stripe.com;

f)      delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Visa Inc. will be able to download a PDF copy of this Order via electronic mail to businessconduct@visa.com;

g)      delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where American Express Company will be able to download a PDF copy of this Order via electronic mail to amexsru@aexp.com;

h)      delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Mastercard Inc. will be able to download a PDF copy of this Order via electronic mail to ipinquiries@mastercard.com;

i)     delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Discover Financial Services, Inc. will be able to download a PDF copy of this Order via electronic mail to civilsubpoena@discover.com.

j)     delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Apple, Inc. will be able to download a PDF copy of this Order via electronic mail to lawenforcement@apple.com;

k)     delivery of (i) a PDF copy of this Order, or (ii) a link to a secure website where Google LLC will be able to download a PDF copy of this Order via electronic mail to google- legal-support@google.com;

l)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where JPMorgan Chase Bank, NA will be able to download a PDF copy of this Order via electronic mail to kristina.r.hall@jpmchase.com;

m)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Payoneer Inc. will be able to download a PDF copy of this Order via electronic mail to thirdpartyrequests@payoneer.com;

n)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where PingPong Global Solutions Inc. will be able to download a PDF copy of this Order via electronic mail to legal-int@pingpongx.com;

o)     delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Airwallex (Hong Kong) Limited and Airwallex (UK) Limited will be able to download a PDF copy of this Order via electronic mail to kking@maglaw.com;

p)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Worldpay (HK) Limited will be able to download a PDF copy of this Order via electronic mail to support@worldpay.com;

q)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where World First UK Ltd. will be able to download a PDF copy of this Order via electronic mail to complaints@worldfirst.com;

r)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Bank of China will be able to download a PDF copy of this Order via electronic mail to service.at@bankofchina.com;

s)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Citibank N.A. will be able to download a PDF copy of this Order via electronic mail to alyssa.mitchell@citi.com, renae.a.rodriguez@citi.com and lsi@citi.com; and

t)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Green Dot Bank will be able to download a PDF copy of this Order via electronic mail to IR@greendot.com;

u)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where iDEAL, a payment services product provided by Stripe Payments Canada, Ltd., will be able to download a PDF copy of this Order via electronic mail to notices@stripe.com;

v)      delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where Wise Payments Limited will be able to download a PDF copy of this Order via electronic mail to thirdpartyrequests@wise.com;

w)    delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where WeChat Pay will be able to download a PDF copy of this Order via electronic mail to wxpayglobal@tencent.com;

x)    delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where CFSB will be able to download a PDF copy of this Order via electronic mail to compliance@cfsb.com; and

y)    delivery of: (i) a PDF copy of this Order, or (ii) a link to a secure website where First Century will be able to download a PDF copy of this Order via electronic mail to info@myfirstcenturybank.com.

5. Defendants are hereby given notice that they may be deemed to have actual notice of the terms of this Order and any act by them in violation of this Order may be considered and prosecuted as in contempt of this Court.

6. The $5,000.00 bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Order is terminated.

7. This Order shall remain in effect during the pendency of this action, or until further order of the Court.

8. Defendants may appear and move to dissolve or modify the Order on two (2) days' notice to Plaintiff or on shorter notice as set by the Court.

**SO ORDERED.**

SIGNED this 24 day of April, 2025, at 3⁰⁰ .m.
New York, New York

HON. ALVIN K. HELLERSTEIN
UNITED STATES DISTRICT JUDGE